PEARSON, MJ

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MIGUEL ORTIZ, *on behalf of* S.O., | ) | CASE NO.   1:09-CV-0700 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE ECONOMUS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE PEARSON |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |

This is an action for judicial review of the final decision of the Commissioner of the

Social Security Administration (the "Agency") that Plaintiff Miguel Ortiz, on behalf of his son

S.O., was no longer entitled to Supplemental Security Income ("SSI") child's benefits under Title

XVI of the Social Security Act.[1]  ECF No. 1.

For the reasons provided below, the undersigned finds that the Agency's decision to cease

payment of child's SSI to Ortiz on behalf of his son, S.O., is based upon proper legal standards

and supported by substantial evidence.  Accordingly, the undersigned recommends that the

Agency's final decision be affirmed.

---

[1]  District Judge Peter C. Economus referred this matter to the undersigned Magistrate
Judge pursuant to Local Rule 72.2 to prepare a Report and Recommendation.  Docket Entry
April 6, 2009 [non-document].

(1:09-CV-0700)

## I. **Background and Procedural History**

 Alleging a disability onset date of June 27, 1999, S.O.'s mother applied for benefits on

behalf of her son on March 9, 2000.  (Tr. 140-42.)  On August 21, 2000, the Social Security

Administration found that S.O. met Listing 112.11 for Attention Deficit Hyperactivity Disorder

("ADHD") and Communication Disorder and had been disabled as of February 1, 2000.  (Tr. 27-

28.)

 On August 15, 2005, the Agency ordered that S.O.'s benefits cease.  In explanation, the

Agency issued a Notice of Disability Cessation to Miguel Ortiz ("Ortiz"), S.O.'s father, stating

that, based upon review of S.O.'s case, medical improvement had occurred and "[S.O.] no longer

[met] the disability requirements."  (Tr. 92.)  Ortiz appealed this cessation on August 22, 2005.

(Tr. 89.)  Ortiz and S.O. attended a cessation hearing on May 16, 2006, before hearing officer

Charlotte Conroy. (Tr. 76-86.)  During the hearing, S.O. acted as an English to Spanish

interpreter for his father.[2]  (Tr. 85.)  On May 26, 2006, the Agency affirmed its finding that

S.O.'s disability had ceased in August 2005.  (Tr. 64-87.)  The hearing officer based this decision

on medical improvement finding that S.O.'s ADHD is controlled with medication and his speech

is understandable.[3]  (Tr. 71.)

 Ortiz filed a request for a hearing before an Administrative Law Judge ("ALJ") which the

---

 [2]  The record reflects that, at times, Ortiz has been aided by his son or an official
interpreter.  (Tr. 85.)  At other times, Ortiz appropriately responds to questions put to him in
English without the aid of an interpreter.  (Tr. 562-63, 575.)

 [3]  During the hearing in which S.O. acted as his father's interpreter, the hearing officer
observed that S.O. "was pleasant, polite and no symptoms of hyperactivity were observed.  His
speech was very understandable."  (Tr. 85.)

(1:09-CV-0700)

Agency granted.  On June 3, 2008, Ortiz appeared before and communicated with the ALJ

without an interpreter.[4]  After the ALJ explained Ortiz's right to legal representation, Ortiz asked

to be given "a chance to find a lawyer."  The ALJ granted the request and continued the hearing

to allow Ortiz time to find an attorney.  (Tr. 563.)  On October 21, 2008, *via* video conferencing

technology, Ortiz and his son appeared without counsel before the ALJ.  The ALJ provided an

interpreter who was available to assist Ortiz *via* a teleconference call.  (Tr. 569-76.)  On

November 13, 2008, the ALJ issued his decision affirming medical improvement and denying

benefits.  (Tr. 16-23.)

     The ALJ reported the following findings of fact and conclusions of law:

     1.  The most recent favorable medical decision finding that the claimant was disabled is the determination dated August 21, 2000.  This is known as the "comparison point decision" or CPD.

     2.  At the time of the CPD, the claimant had the following medically determinable impairments: attention deficit hyperactivity disorder and a communication disorder. These impairments were found to meet listing(s) 112.11 of 20 CFR Part 404, Subpart P, Appendix 1.

     3.  Medical improvement occurred as of August 1, 2005 (20 CFR 416.994a(c)).

     4.  The claimant was born on November 1, 1995.  Therefore, he was a school-age child, as of August 1, 2005.  The claimant is currently a school-age child (20 CFR 416.926a(g)(2)).

     5.  Since August 1, 2005, the claimant has had the following severe impairments: attention deficit hyperactivity disorder, obesity, asthma, history of depression and oppositional defiant disorder (20 CFR 416.924(c)).

     6.  Since August 1, 2005, the claimant has not had an impairment or combination of

---

    [4]  The record does not show that S.O., who was twelve and a half at the time, spoke or assisted his father in any way.  (Tr. 572.)

(1:09-CV-0700)

impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Supart P, Appendix 1 (20 CFR 416.925 and 416.926).

7.  Since August 1, 2005, the claimant has not had an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926a).

8.  The claimant's disability ended as of August 1, 2005, and the claimant has not become disabled again since that date (20 CFR 416.994a).

(Tr. 19-23.)

Ortiz, on behalf of his son, filed a request for a review of the ALJ's decision which the Appeals Council denied on January 30, 2009.  (Tr. 3-5.)  Because the Appeals Council denied the request for review, the ALJ's decision dated November 13, 2008, became the final decision of the Agency.  Seeking judicial review of the Agency's final decision terminating his son's benefits, Ortiz timely filed a Complaint asserting the following issues:

1.  Ortiz did not have a full and fair hearing; he was not afforded due process and he did not knowingly waive his right to an attorney.

2.  The case should be remanded for the consideration of the new evidence submitted post-hearing as it is relevant to the child's condition at the time of the ALJ's decision.

ECF No. 14 at 11.

## II.  Judicial Review of a Final Agency Decision

Judicial review of the ALJ's decision denying disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the ALJ properly applied relevant legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence is more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health &*

-4-

(1:09-CV-0700)

*Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  Under 42 U.S.C. § 405(g), the findings of the ALJ are conclusive if they are supported by substantial evidence.

The substantial evidence standard presupposes that there is a "zone of choice" within which the Agency may proceed without interference from the courts.  *Mullen*, 800 F.2d 535, 545 (6th Cir. 1986) (*quoting Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984)).  The ALJ's decision must be affirmed if it is supported by substantial evidence even if the reviewing court would have decided the matter differently, and even if substantial evidence also supports a different conclusion.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen*, 800 F.2d at 545.  "Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole.  *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981); *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535 (6th Cir. 2001).  The district court may look into any evidence in the record, regardless of whether it has been cited by the ALJ.  *Mullen*, 800 F.2d at 545.  The reviewing court, however, may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard*, 889 F.2d at 681; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

-5-

(1:09-CV-0700)

### III.  **Determination of Continuing Disability in a Minor**

The Social Security Administration has adopted a three-step sequential evaluation for periodic determinations of whether a child's disability continues.

### A.  **First Sequential Evaluation**

First, the Agency must determine if there has been any "medical improvement" in the child's condition.  20 C.F.R. § 416.994a(b).  Medical improvement is "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable decision that [the claimant] was disabled or continued to be disabled . . . based on changes (improvement) in the symptoms, signs, or laboratory findings associated with [the claimant's] impairment(s)."  20 C.F.R. § 416.994a(c).

Second, the Agency determines whether, despite improvement, the impairment still meets or equals the severity of the listed impairment it met at the time of the most recent favorable decision that the Plaintiff was disabled.  If the impairment does, the child's disability will be found to continue.  If the impairment does not, the Agency will proceed to step three.  20 C.F.R. § 416.994a(b).

As described below, the final step requires that the Agency determine whether the child is currently disabled in accordance with the rules for Initial Determination of Disability in a Minor.  This requires a separate three-step evaluation.  *See* 20 C.F.R. §§ 416.994a(b) & 416.924; SSR 05-03p.

-6-

(1:09-CV-0700)

### B. Second Sequential Evaluation – Initial Determination of Disability in a Minor

An individual under the age of 18 is considered disabled if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382(c)(3)(i); 20 C.F.R. §§ 416.906, 416.911(b).  The regulations prescribe a separate three-step sequential evaluation process, pursuant to the rules for Initial Determination of Disability in a Minor, for reaching this determination.  *See* 20 C.F.R. § 416.924(a).  At Step One, a child will be found "not disabled" if he is engaging in substantial gainful activity.  *See* 20 C.F.R. § 416.924(b).  At Step Two, a child will be found "not disabled" if he does not have an impairment or combination of impairments that is severe, *i.e.*, impairments that cause no more than minimal functional limitations.  *See* 20 C.F.R. § 416.924(c).  At Step Three, a child will be found "disabled" if he has an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  *See* 20 C.F.R. § 416.924(d).

If a child does not meet or *medically* equal a Listing, in order to determine whether a child's impairment(s) *functionally* equals a Listing at Step Three, the ALJ must assess the functional limitations caused by the impairment(s) by considering how a child functions in the following six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

(1:09-CV-0700)

    5.  Caring for yourself; and

    6.  Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi); *see* also 20 C.F.R. § 416. 926a(a).  If a child's impairment(s) results in "marked" limitations in two domains or an "extreme" limitation in one domain and meets the duration requirements,[5] the impairment(s) functionally equals the listings and the child will be found disabled.  *See* 20 C.F.R. § 416. 926a(d).

    The Agency defines a marked and extreme limitation as follows:

    (2) Marked limitation.

    (i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."  It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

    (3) Extreme limitation.

    (i) We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked."  "Extreme" limitation is the rating we give to the worst limitations.  However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we

---

    [5]  "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.  We call this the duration requirement."  20 C.F.R. § 416.909.

-8-

(1:09-CV-0700)

> would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. §§ 416.926a(e)(2)(i), (e)(3)(i).

In the instant case, the ALJ completed the evaluation required to determine whether S.O.'s disability continued.  As a result of his evaluation, the ALJ found that: (1) medical improvement had occurred; (2) S.O.'s impairments did not meet or equal the severity of the listed impairment(s) met at the time of the most recent favorable decision; and (3) S.O. is not currently disabled in accordance with the rules for Initial Determination of Disability in a Minor.  The ALJ also found that S.O. did not demonstrate a marked or extreme limitation in any domain.  Specifically, the ALJ found that S.O. had *a less than marked limitation* in four of the domains and no limitation in the remaining two domains.[6]

## V.   **Law and Analysis**

Ortiz alleges that procedural defects inured to his prejudice.  He details that: (1) he was denied due process by not being given a full and fair hearing, (2) did not knowingly waive his right to an attorney, and (3) that relevant new evidence exists that should be considered upon remand.  Although he claims that the new evidence submitted to the Appeals Council shows that medical or psychological improvement has not occurred and that his son's condition has

---

[6]  The ALJ found that, as of August 2005, Plaintiff had less than marked limitations in the areas of acquiring and using information, attending and completing tasks, and health and physical well-being; had mild limitations in the area of interacting and relating with others; and had no limitations in the areas of moving about and manipulating objects and caring for himself.  (Tr. 22-23).

(1:09-CV-0700)

worsened, Ortiz does not argue that S.O. medically or functionally equals a listing[7]. ECF No. 21 at 4.

Despite Ortiz's arguments, a thorough review of the record reveals that the ALJ conducted a hearing wherein Ortiz was afforded due process and knowingly and voluntarily waived his right to counsel.  This review also reveals that Ortiz does not meet the standard for a remand for the consideration of new evidence pursuant to Sentence Six of 42 U.S.C. § 405(g) and that the ALJ's determination is supported by substantial evidence.

## A.  **Administrative Due Process Rights**

Disability claimants have a statutory and regulatory right to legal representation at administrative hearings.  42 U.S.C. § 406; 20 C.F.R. § 416.1505.  Although, legal representation during an administrative hearing can prove beneficial for those individuals who are unfamiliar with the nuances of fact-finding and administrative procedure, the right to counsel during an administrative proceeding is not of a constitutional magnitude.  *See Goldberg v. Kelly*, 397 U.S. 254, 270-71 (1970); *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009). Nonetheless, disability claimants must be informed of the right to counsel and waiver of this right must be made knowingly and voluntarily.  *See generally Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *see also Allison v. Apfel*, 229 F.3d 1150, 2000

---

[7]  The Commissioner argues that Ortiz has waived the opportunity to "contest the ALJ's finding that he no longer meets the ADHD listing, or that the evidence before the ALJ showed his psychological functioning medically improved as of August 2005."  ECF No. 18 at 12 (relying on *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 149.)  The undersigned agrees.  Ortiz's clearly stated objections to the Agency's ruling do not challenge the ALJ's conclusion that S.O. no longer medically meets or functionally equals a listing.  *Compare* ECF No.14 at 11 *with* ECF No. 21 at 4.

(1:09-CV-0700)

WL 1276950 at *5 (6th Cir. 2000) (unpublished).

### 1. Ortiz Knowingly and Voluntarily Waived his Right to Counsel

The record shows that, in advance of the hearing, the Agency sent Ortiz a packet of information containing written instructions regarding the upcoming hearing before the ALJ in both Spanish and English. (Tr. 41-46 (Spanish) and 47-52 (English).) Duplicate notices explained, among other things, Ortiz's right to representation at the hearing. Ortiz signed and dated an English version of a form acknowledging his intent to attend the June 3, 2008 hearing before the ALJ and receipt of notice of the hearing, dispelling any notion that Ortiz had not received the packet. (Tr. 40.) While the form bearing Ortiz's signature does not specify his right to counsel, that information is explicitly provided in the packet. (Tr. 42 (Spanish), 48 (English).) Additionally, at the beginning of the first segment of the hearing, the ALJ advised Ortiz of his right to counsel in the following colloquy which was conducted in English:

> ALJ: . . . Now, I have to advise you about your rights to representation. You have the right to have an attorney to assist you at the hearing.
>
> WIT [Ortiz, unassisted by an interpreter]: Okay.
>
> ALJ: And if you are interested in doing that, I'll give you a delay for about six weeks so you can find somebody if you want to. If you don't want to, that's fine. If you go to Legal Aid, if they're able to take your case and you qualify financially for them, their services, then they would do it totally free of charge. If you go to an attorney or to a non attorney representative, they would, because you've been receiving benefits and there are no back benefits to be used, they would actually charge you money to represent you.
>
> WIT: Okay.
>
> ALJ: Some people think it's helpful to have a representative. Others go ahead without so it's totally up to you. What would you like to do? Do you want to waive your rights to –

-11-

(1:09-CV-0700)

        WIT: Yeah.

        ALJ:  – do your hearing today or do you want to have a chance to look further?

        WIT: Yeah.  Give me a chance to find a lawyer.

        ALJ: You want to have a chance to find a lawyer?  Okay.  Now, I'm going to let you do that, but I want to tell you a few things.  If you don't find anybody to represent you, don't worry about it.  My job remains the same, regardless of whether you have a representative.  I've got to do the best job I can to make a decision for you.  Okay?  And when we reschedule a case I want you to come to the hearing whether you have a representative or not, okay?

        WIT: Okay.

(Tr. 562-63.)

        The transcript of this exchange clearly reflects that Ortiz asked for the opportunity to find legal representation before proceeding further.  (Tr. 563.)  The ALJ continued the hearing to allow Ortiz time to find legal representation.  Before adjourning the hearing, the ALJ took the extraordinary steps of directing Ortiz to local bar associations, a local law school and a nearby office of the Legal Aid Society for legal assistance.  (Tr. 564-66.)  The transcript also shows that the ALJ provided Ortiz with a list containing the phone number for Legal Aid, offered to request medical records to save Ortiz the cost, and urged Ortiz to show his son's school records to his putative attorney and to bring them back when the hearing resumed.  (Tr. 564, 567.)

        Approximately 4 ½  months later, the hearing resumed with Ortiz and his son appearing without representation.  A sworn interpreter was present *via* telephone.  When questioned about his lack of legal representation, Ortiz informed the ALJ that he was ready to proceed with the hearing without legal representation.  (Tr. 572.)  Plaintiff now asserts that because the ALJ did

-12-

(1:09-CV-0700)

not "fully apprise [him] of his right to counsel" and "because of the language barrier . . .[he] did

not knowingly waive his right of representation."  ECF No. 14 at 14-15.  The record refutes these

claims.[8]

Sixth Circuit case law and the regulations make it clear that a claimant may waive his

statutory right to counsel.  *See* *Duncan*, 801 F.2d at 855; *Allison*, 2000 WL 1276950 at *5;

*Johnson v. Comm'r of Soc. Sec.*, 97 Fed.Appx. 539, 542 (6th Cir. 2004); 20 C.F.R. § 404.971.

The ALJ advised Ortiz of his right to counsel, made the appropriate inquiries and provided ample

information about how Ortiz might locate suitable counsel.  Ortiz answered the ALJ's questions

*without* the aid of the interpreter, *e.g.*, "Yeah.  Give me a chance to find a lawyer," showing that

he understood the ALJ's use of the English language and advice.  (Tr. 572, 575.)  The ALJ acted

properly and was not required to do more.  Ortiz knowingly and voluntarily waived his right to

counsel.  There was no resulting procedural defect or violation of due process.

### 2.  The ALJ Conducted a Full and Fair Hearing

The burden is typically on the claimant to provide an adequate record upon which the

ALJ can make an informed decision as to disability status.  *See* *Landsaw v. Sec'y of Health &*

---

[8]  In response to the ALJ's question of whether it was correct that Ortiz had appeared without counsel, Ortiz said "No."  (Tr. 572.)  Ortiz makes more of this than the record shows.  It is entirely reasonable that Ortiz's "No" simply confirmed that he did not have counsel, *i.e.* "No, [I do not have counsel]," and was offered before the ALJ completed his statement with "Is that correct."  (Tr. 572.)  This is hardly evidence that Ortiz did not understand.  More precisely, it emphasizes his ability to understand the English language given that he answered without the aid of the interpreter.  (Tr. 572.)  In any case, a mistaken response, alone, is not indicative of a tainted hearing.  *See* *Duncan*, 801 F.2d at 955.  It is more telling that in response to the ALJ's follow-up question –  "All right.  So we are ready to go ahead today?" –  that Ortiz responded with "Si" which the interpreter restated as "Yes."  (Tr. 572.)  It was after that exchange that the ALJ proceeded to substantively question S.O. and Ortiz.

(1:09-CV-0700)

*Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).  The ALJ, however, is required to "develop the factual record fully and fairly" and to conduct a "full inquiry."  *Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986); *Landsaw*, 803 F.2d at 214.  "Only under special circumstances, *i.e.*, when a claimant is without counsel, []not capable of presenting an effective case, and is unfamiliar with hearing procedures, does an ALJ have a special, heightened duty to develop the record."  *Duncan*, 801 F.2d at 856; *Lashley*, 708 F.2d at 1051-52.

Although a court scrutinizes with care the administrative record when a claimant appears without counsel, the mere fact that a claimant was unrepresented is not, alone, grounds for an automatic reversal.[9]  *Holden*, 641 F.2d at 408.   There is no bright line test for determining when an ALJ has failed to fully develop the record.  *Duncan*, 801 F.2d at 856.   Rather, a court must examine each case on its own merits to determine whether the ALJ failed to fully develop the record by not probing all relevant facts and therefore denied the claimant a full and fair hearing.  *Id.*; *see also* *Rowden v. Chater*, 87 F.3d 1315, 1996 WL 294455 at *1 (6th Cir. 1996) (Table).

Ortiz claims the hearing was defective because of its brevity, and the "file was not fully developed, and there were gaps in the evidence."  ECF No. 14 at 15.  The undersigned disagrees.

 An ALJ's duty to develop the record is not measured by the length of the hearing or the number of questions interposed.  Hearings should last no longer than necessary and, ideally, questions should be designed to elicit only necessary information.  Ortiz has not suggested nor has the undersigned determined that more detailed questioning or a longer hearing would have

---

[9]  The Court notes that if Ortiz's waiver of the right to counsel had not been knowing and voluntary, that failing could be harmless if an adequate record were made.  *See* *Duncan*, 801 F.2d at 855 (*citing* *Holden v. Califano*, 641 F.2d 405, 408 (6th Cir. 1981)).

-14-

(1:09-CV-0700)

yielded information pertinent to the ALJ's disability determination.[10]  *See Duncan, 801 F.2d at 856.*

The ALJ adequately developed the record with respect to S.O.'s impairments.  The testimony elicited provided current information about S.O.'s performance in school and that he no longer has problems in school or at home, (Tr. 574-75), and the ALJ effectively obtained up-to-date school and additional medical records from S.O.'s treating physician, Dr. Henry.  (Tr. 571-72.)  The record also reflects that Ortiz presented the ALJ with documentary scholastic and medical evidence in support of his position.[11]  (Tr. 567, 571-72.)

It is fair to assume that the ALJ asked questions on topics about which he sought additional information.  When questioned by the ALJ, Ortiz and his son orally provided such additional information.  (Tr. 572-75.)   An ALJ is under no obligation to solicit cumulative testimonial or documentary information when the record contains adequate information to permit the ALJ to render a decision.  *See Skinner v. Astrue, 478 F.3d 836, 844 (7th Cir. 2007)* (finding no procedural defects when an ALJ does not order a consultative examination if an applicant's medical evidence about a claimed impairment is sufficient).  There is nothing in the record – including the length of the hearing or the number or probing nature of the questions put to Ortiz

---

[10]  As discussed below, the new evidence Ortiz seeks to submit pursuant to a Sentence Six remand is largely duplicative and does not manifest a different conclusion.  Additionally, it is not at all apparent that the lack of representation adversely affected the hearing.

[11]  The ALJ  mentioned that he had received "the additional records that we asked for after [Ortiz's] last appearance."  (Tr.  571.)  Ortiz's claim that the records he submitted without the assistance of counsel were incomplete is unsubstantiated.  The record does, however, show that, ultimately, the Agency was presented with duplicate records.

(1:09-CV-0700)

or his son – to support a claim that the absence of counsel or a language barrier prevented Ortiz or the ALJ from fully developing the record or that this case presents the "special circumstances" found in *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir.1983), wherein the claimant was unrepresented, possessed limited intelligence and appeared easily confused. *See* *Nabours v. Comm'r*, 50 Fed. Appx. 272, 276 (6th Cir. 2002) (finding absence of counsel not indicative of procedural defect); *Holden v. Califano*, 641 F.2d 405 (6th Cir. 1981) (finding no due process violation when unrepresented claimant was not uneducated, ignorant nor timid).

Overall, the record supports the conclusion that medical improvement had occurred and did not show that S.O. continued to be disabled.[12]  The ALJ's written decision evidences a thorough review of the record and a thoughtful analysis.  Having carefully scrutinized the entire administrative record, the Court fails to see how, under the circumstances presented therein, the ALJ denied Ortiz a full and fair hearing or, that the length of the hearing or absence of counsel resulted in unfair or unsupported conclusions.  *Cf. Lashley*, 708 F.2d at 1052.  The record provides substantial evidence in support of the ALJ's findings which clearly fall within the Agency's "zone of choice."  *Mullen*, 800 F.2d at 545.

_____

[12]  For example, S.O.'s school records show consistency or improvement in S.O.'s grades from 2003 - 2007, with a sharp decline for only the 2007-2008 academic year.  (Tr. 193-96).  Ortiz speculates that the one-year decline is related to S.O.'s ongoing impairments and offers no reason for the improvement in earlier years.  ECF No. 14 at 17.

(1:09-CV-0700)

### B.  <u>Remand Pursuant to Sentence Six of 42 U.S.C. § 405(g)</u>

Ortiz asserts that the additional medical evidence submitted to the Appeals Council, but not reviewed by the ALJ, is "relevant and shed[s] light on the seriousness of S.O.'s condition at the time of the ALJ's decision."  ECF No. 14 at 16.  He requests a remand pursuant to Sentence Six of 42 U.S.C. § 405(g), for consideration of this additional evidence.

The evidence supporting a motion to remand must be both "new and material," and claimants must show "good cause for not presenting it in the prior proceeding."  *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir.1996).  Evidence is *ne*w only if it was "not in existence or available to the claimant at the time of the administrative proceeding."  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.2001) (*quoting Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).  It is material if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence."  *Id.* (*quoting Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988)).

Good cause is shown "by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ."  *Id.* (*quoting Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984) (per curiam)).  In the Sixth Circuit, evidence or a report simply dated after the ALJ's decision does not satisfy the good cause requirement.  The claimant must also provide a valid reason for his or her failure to obtain that evidence before the hearing date.  *See Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir.1986).  Mere cumulative evidence does not establish good cause for a remand.  *Borman v. Heckler*, 706 F.2d 564, 568 (6th Cir.1983); *Carroll v. Califano*, 619 F.2d 1157, 1162

-17-

(1:09-CV-0700)

[(6th Cir.1980)](#).  Lastly, the party seeking remand has the burden of demonstrating that remand is appropriate.  *See [Willis v. Sec'y of Health & Human Servs.](#), 727 F.2d 551, 554 (6th Cir.1984)*.

Ortiz fails to meet the standard for a remand under Sentence Six.  Although some of the evidence presented to the Appeals Council is dated *after* the ALJ's decision, most is duplicative of that the ALJ reviewed in reaching his decision which affirmed the cessation of benefits.  As presented, the newly submitted evidence consists of additional school records and a medical record from S.O.'s treating physician.  The ALJ already had access to reports from the Cleveland Metropolitan School District regarding S.O.'s grades and behavior problems.  S.O.'s treating physician Dr. Ng's report is cumulative in that it merely reiterates his earlier diagnoses and opines the need for continued treatment.[13]

Evidence which may arguably be considered "new" as defined in *Foster v. Halter* is not "material" when it does not evidence "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." [*Foster*, 279 F.3d at 357](#).  The letter from Dr. Ng and the incident reports from his school are of this sort as well.  Dr. Ng's letter simply recounts S.O.'s diagnoses and treatment – items of which the ALJ was already aware.  (Tr. 554.)  The later submitted reports of disruptive behavior in school corroborate those already reviewed by the ALJ for the same time period and incorporated in his decision.[14]  *Compare* (Tr. 556-59) *with* (Tr. 325, 327, 333, 340, 342).  While the incident

[13]  S.O. testified that he was continuing to take his ADHD prescription medication – Adderall – daily.  (Tr. 573-74.)

[14]  Ortiz's argument that the ALJ failed to comply with the legal requirement for determining whether there was non-compliance with prescribed treatment is not well taken.

(1:09-CV-0700)

reports may arguably indicate some limitation in at least one domain, even viewing this evidence in the light most advantageous to the claimant, Ortiz still falls short of proving that his son is disabled.[15]

Finally, Ortiz failed to show "good cause for not presenting [the evidence] in the prior proceeding." *Cline*, 96 F.3d at 148.  Ortiz offers that he "was [un]able to obtain this information on his own." ECF No. 14 at 17.  To the extent this explanation is meant to bootstrap onto Ortiz's claims of an invalid waiver of counsel and the ALJ's failure to fully develop the record, it, like those claims, fails to persuade.

### VI.  Conclusion and Recommendation

For the foregoing reasons, the undersigned finds that the ALJ's decision is supported by substantial evidence, derived using properly applied relevant legal standards, and that Ortiz is not entitled to a remand pursuant to Sentence Six of 42 U.S.C. § 405(g).  Accordingly, the undersigned recommends that the Agency's final determination that S.O.'s disability has ended and, therefore, benefits should cease be AFFIRMED.

---

First, Ortiz has waived any opportunity to raise that issue given his failure to timely do so.  More importantly, while the regulations require that a claimant follow prescribed treatment or be found not disabled unless good reasons are provided, any failure by the ALJ to articulate good reasons for non-compliance is harmless error given that the ALJ's alleged failure to follow the Agency's procedural rule has not impeded  "meaningful review" of the ALJ's decision.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (finding that a  *de minimis* procedural violation is harmless error).  And, as importantly, any allegation that Ortiz or S.O.'s lack of command of the English language justified S.O.'s non-compliance with treatment is refuted by the record, as described above.

[15]  Evidence of marked limitation in two domains is required for a determination of functionally equaling a listing and, thereby, establishing disability.  At best, S.O. arguably establishes this functional equivalent for only one domain.

(1:09-CV-0700)

   This matter is terminated on the docket of the undersigned.


  July 6, 2010                *s/ Benita Y. Pearson*
Date                  United States Magistrate Judge


## **OBJECTIONS**

   Objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

-20-